UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. S1-4:06CR00775 RWS (AGF) |
| KENNETH M. PETTIS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motion filed by Defendant, Kenneth M. Pettis. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress identification testimony. (Doc. #29). An evidentiary hearing was held on January 23, 2007.[1] The government was represented by Assistant United States Attorney David M. Rosen. Defendant was present and represented by his attorney, Assistant Federal Public Defender Brian S. Witherspoon. At the hearing, the government presented the testimony of Corporal Craig Picha, who has been employed with the City of Frontenac Police Department for 12½ years. The witness was cross-examined extensively by defense counsel. Based on the testimony and evidence adduced and having had an opportunity to

---

[1] A superseding indictment, which added a forfeiture count, was filed following the evidentiary hearing. At the arraignment on the superseding indictment, Defendant waived his right to file any additional pretrial motions, and confirmed that no further pretrial proceedings were necessary related to the superseding indictment.

observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On October 14, 2005, the Frontenac Police Department received a report of suspicious activity at the Neiman Marcus store, involving the attempted use of a counterfeit credit card. The suspect was described as a black male, wearing a white shirt and khaki pants, and was observed driving a gold Chevrolet Trailblazer. Although the parties provided little detail at the evidentiary hearing regarding the incident at the store, the suspect had attempted to make a purchase from Linda Foy, a salesperson, using what she believed to be a counterfeit identification and credit card in the name of Eugene Fletcher. Ms. Foy apparently contacted loss prevention, and Mr. Benett, the loss prevention supervisor, came to the sales desk to assist. Like Ms. Foy, Mr. Benett had a face-to-face encounter with the suspect, presumably from across the sales counter, and was able to observe the suspect for probably a few minutes. Although no testimony was presented regarding the details of what happened thereafter, it was established that the suspect left the store with the credit card and identification, which items had either been returned to him before he fled, or had been snatched back by him. Cpl. Picha, who had not been called to the scene to investigate, did not know whether the two witnesses provided a more detailed description of the suspect to the officers involved in the investigation.

Based on the description provided, police officers were able to locate the Trailblazer, which exited the mall and drove west on Highway 40. Officer Barnet, who observed the car as it drove past him, saw that the driver was a black male. Another officer was able to catch up to and pursue the suspect's car as it sped down Highway 40, but that officer broke off the pursuit when it became too dangerous.

Shortly thereafter, the Trailblazer was located on the Brentwood Boulevard off ramp of Highway 40, where it had been abandoned. Among the items located inside the car were two California driver's licenses. One had Defendant's photograph and was in the name of Defendant Kenneth Pettis. The other license was in another name, but appeared also to contain a photograph of Defendant, perhaps from an earlier time.

Cpl. Picha assembled the photo spread at issue. To do so, he obtained a photograph of Defendant Pettis from the California driver's license bureau. The photograph provided appeared to be the same as the one on the Pettis license that had been seized from the Trailblazer. On October 28, 2005, Cpl. Picha prepared two identical photo spreads using the picture of Defendant he had obtained and the photographs of five other black males from the Missouri driver's license bank. He attempted to use individuals whose features matched the Pettis photograph as much as possible, focusing on such matters as type of hair and facial hair. See Govt. Exs. 1 & 2.

On October 31, 2005, Cpl. Picha brought one copy of the photo array to the Neiman Marcus store and asked to meet with Mr. Benett. He had not advised Mr. Benett that he would be coming prior to his arrival. He met with Mr. Benett alone, and believed

3

that meeting took place in a room in the loss prevention office. Cpl. Picha advised Mr. Benett that he had a photo array he wanted him to look at for possible identification. He advised him that some of the photos might be old and features such as hair may have changed. He did not indicate how he had put the photo array together or that the suspect was necessarily represented, nor did he do anything to indicate which photograph Mr. Benett should select. Using the photo spread marked as Government's Exhibit 2, Cpl. Picha placed all six photos on the desk or table, and asked Mr. Benett to look at each of the photos. He looked at all six photographs and immediately selected photo #1, which is the photograph of Defendant Pettis. Mr. Benett's signature appears at the bottom of the photograph he selected. See Govt. Ex. 2.

The following day, on November 1, 2005, Cpl. Picha returned to the store and met alone with Ms. Foy, he believed in the loss prevention office. He had not spoken to Ms. Foy prior to his arrival. Cpl. Picha assumed that Ms. Foy and Mr. Benett had not spoken to one another regarding the identification, but he did not discuss that question with the two witnesses. He followed the same procedures with Ms. Foy that he had used with Mr. Benett. Using the duplicate photo array he had prepared, he laid all six photos on the table and asked Ms. Foy to examine each. Cpl. Picha did not indicate to Ms. Foy which photograph she should select and did not discuss with her the identification that had been made by Mr. Benett. After looking at the photographs, Ms. Foy also selected the picture of Defendant, and her signature appears at the bottom of the first photograph. See Govt. Ex. 1.

4

## CONCLUSIONS OF LAW

Defendant has filed a motion to suppress the photo array identifications made by Mr. Benett and Ms. Foy. A defendant's constitutional right to due process may be violated by pretrial confrontation procedures that are unnecessarily suggestive and conducive to an irreparably mistaken identification. Stovall v. Denno, 388 U.S. 293, 302 (1967). Because it is the likelihood of misidentification that violates the right to due process, the court's inquiry focuses on the reliability of the identification. Neil v. Biggers, 409 U.S. 188, 198 (1972).

Any analysis of identification testimony involves a two-step approach. First, the court must examine whether the identification procedures used were unduly suggestive. Biggers, 409 U.S. at 198-99. Second, if the procedures used were unduly suggestive, the court must then look to the totality of the circumstances to determine whether the identification testimony is nevertheless reliable. Manson v. Brathwaite, 432 U.S. 98, 116 (1977). In determining whether the identification is reliable, the court examines the five factors identified in Biggers, namely, the witness's opportunity to view the defendant, the witness's degree of attention, the accuracy of any prior description given by the witness, the witness's level of certainty in his or her identification, and the length of time between the occurrence described and the confrontation. Id. at 115 (citing Biggers, 409 U.S. at 199-200); United States v. Johnson, 56 F.3d 947, 953-4 (8th Cir. 1995). The identification testimony may be admitted if the reliability of the identification judged by

5

the above factors outweighs the effect of any undue suggestion.  Manson, 432 U.S. at 115.  Each case must be reviewed on its own facts.  See Id. at 114.

In this instance, Defendant has not shown the identification procedures to be unduly suggestive.  This is not a case where the witnesses were shown only a single individual or a single photograph.  Here the officer assembled a photo array with six individuals, and attempted to select other individuals who fairly matched Defendant, especially with regard to hair and facial hair.  In this regard, the Court believes that the officer was fairly successful.  The photographs of the other individuals are similar to Defendant's with regard to complexion, facial hair, and age.  Granted, the photographs each differ from Defendant's in some respects.  As Defendant noted in cross-examination, the photograph of Defendant is a square, while the others are rectangular, and the background of several of the other photographs is grey.  But the Court does not find these differences cause Defendant's photograph to stand out.  The size of the photographs is not noticeably different, and the background of one of the other photographs is a color similar to that of Defendant's photo.

Any differences between the photographs are not sufficient to make the photo array itself unduly suggestive, and overall, the Court finds the composition of the photo array to be fair and reasonable.  See United States v. Rose, 362 F.3d 1059, 1066 (8th Cir. 2004) (holding photographic lineup not unduly suggestive although defendant's eyes may have appeared closed in his photograph and his hair was shorter than the rest, where basic physical features of others were consistent with description provided by witness and

generally similar to defendant's features); United States v. Traeger, 289 F.3d 461, 474 (7th Cir.), cert. denied, 537 U.S. 1020 (2002) (lineup not impermissibly suggestive though suspect larger than other participants because size differential not too great; authorities "are not required to search for identical twins in age, height, weight, or facial features"); United States v. Johnson, 56 F.3d 947, 954 (8th Cir. 1995) (photo spread comprised of African-American men with similar features to the African-American suspect was proper); Harker v. Maryland, 800 F.2d 437, 444 (4th Cir. 1986) (photo array not impermissibly suggestive where only one other individual wore clothing similar to defendant's clothing, as identification based more on facial features than clothing).

The officer also employed other procedures designed to minimize any unfair influences. The identifications by the two witnesses were done separately and the witnesses did not see Defendant or his picture on the seized driver's license between the time of the incident and their identifications. The officer placed all six photos on the table and he did not do anything either to suggest that the photograph of the suspect was necessarily there or to suggest the selection of one individual over another. See United States v. Bowman, 215 F.3d 951, 965-66 (9th Cir. 2000) (lineup not impermissibly suggestive though witnesses knew suspects were in custody and had not been interviewed before viewing lineup).

Based on the record as a whole, including a careful review of the photographs themselves, Defendant has not shown that the identification procedures used were unduly suggestive. In light of this conclusion, it is unnecessary to address the reliability of the

7

identification testimony. See United States v. Staples, 410 F.3d 484, 487 (8th Cir. 2005). Assuming, arguendo, the identification procedures were unduly suggestive, defendant's suppression motion still fails because identifications made by the eyewitnesses are nonetheless reliable.

In this instance, the evidence is strong on each of the Biggers factors.[2] Both witnesses had a good opportunity to view the suspect up close, for more than a few minutes, and Ms. Foy also had the opportunity to speak to Defendant. And the witnesses were not casual observers, but rather were persons who had good reason to pay close attention to the situation. Both witnesses immediately selected Defendant's photograph, and while the identification did not occur immediately after the incident, only approximately two weeks passed between the incident and the identifications, which is not an undue passage of time. See, e.g., Biggers, 409 U.S. at 201 (approving, in light of other factors, identification conducted seven months after incident); Palmer v. Clarke, 408 F.3d 423, 436 (8th Cir.) (finding reliable identification from photo array made three weeks after witness last saw the defendant), cert. denied, 126 S.Ct. 755 (2005); Kordenbrock v. Scroggy, 919 F.2d 1091, 1103 (6th Cir. 1990) (en banc) (approving identification "less than a month" after crime). That both witnesses independently identified the same individual also bolsters the reliability of the identifications. See

---

[2] Because the sole witness at the hearing did not know whether either witness had given a detailed description of the suspect to investigating officers, the Court cannot assess the accuracy of any description that may have been given by the eyewitnesses.

United States v. Rogers, 73 F.3d 774, 778 (8th Cir. 1996) (identification reliable where at least two other witnesses identified the defendant).

Thus, even if one were to assume the procedures were unduly suggestive – and they were not – applying the factors in Biggers, the Court finds that the reliability of the identifications outweighs any undue suggestion. On the record before the Court, the witnesses' identification of Defendant should not be suppressed. See Manson, 432 U.S. at 114-16 (single photo identification by officer admissible where officer had adequate opportunity to view suspect, was a trained observer, gave a detailed and accurate description of the suspect, was certain of the identification, and identified defendant from a photo only two days after the incident); accord United States v. Johnson, 114 F.3d 435, 442 (4th Cir. 1998).

Given that this is the only ground asserted by Defendant for suppression of any in-court identification that may hereafter be made, on this record the Court finds no basis to suppress any future in-court identification.
Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Identification Testimony [Doc. #28] be **Denied**.

The trial in this matter has been set for **Monday, April 12, 2007, at 9:00 a.m.**, before the **Honorable Rodney W. Sippel**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir.1990).

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 12th day of February, 2007.